### LIMITATION OF THE RULE IN SAGE v. HINKLE.

Court of Appeals for Hamilton County.

Hiram C. Bolsinger, Administrator, v. Betty Halliday.

Decided, May 28, 1915.

*Action by Daughter—For Board and Lodging for Her Deceased Mother —Rule as to Unequivocal Proof Applies to Existence of a Contract Only, and Not to Other Features of the Controversy—Amendment Alleging an Express Instead of an Implied Contract Does Not Introduce a New Cause of Action—Nor Destroy Rights Under the Statute of Limitations.*

1. The substitution, by apt allegations in an amended petition, of an express agreement for an implied agreement to do the same thing. is not a departure from the cause of action in the first instance, but merely provides a different method of proving the action already in court.

2. Inasmuch as the running of the statute of limitations was halted by the filing of the original petition, the contention does not lie that leave to file an amended petition setting up the same claim, but as arising under an express instead of an implied agreement, deprived the defendant of the benefit which would otherwise have come to him by reason of the statute.

3. In an action by a daughter, on a claim for boarding and lodging her deceased mother, the court is compelled under the rule in *Sage* v. *Hinkle* to charge the jury that the contract between the mother and daughter must be established by clear and unequivocal proof, but as to the other issues in the case the rule of preponderance of evidence applies; and the giving of both rules, each in its own sphere and neither one being permitted to usurp the duty of the other, is not error.

*J. G. DeFosset* and *W. A. Hicks,* for plaintiff in error. *George S. Hawke,* contra.

Grant, J.; Meals, J., and Carpenter, J., concur (sitting in place of Judges Jones, Jones and Gorman).

This is a petition in error, the purpose and prayer whereof are the reversal of the judgment of the court of common pleas.

The parties are here in the inverse order of their standing in the court below, but for the sake of clearness and to obviate confusion, they will in this opinion be designated as they were there.

The plaintiff is a daughter of the defendant's intestate. She presented a claim to the defendant administrator for board and lodging bestowed upon his intestate by her, which, upon requisition made by one of the heirs at law, was rejected, as the statute in such case commands. Whereupon the plaintiff sued the claim in the present action, and the defendant administrator, upon a like compulsion, defended against it, as he was by law bound to do.

In her first petition in the suit the plaintiff declared upon a simple indebtedness arising from furnishing the board and lodging referred to, apparently—but without saying so by the petition—upon an implied contract to pay the debt.

After a motion to this petition has been sustained, an amended one was filed, the new matter in it being to the effect that the commodities named were furnished at the instance and request of the intestate, that they were of the reasonable worth of the sum sued for, and that the decedent had agreed to pay it. This last allegation was then stricken from the pleading on motion.

Then the defendant answered, denying generally the charging parts of the petition, but admitting the presentation and rejection of the claim, under requisition as already stated. The answer then set up the relationship of the intestate and the plaintiff as that of mother and daughter.

The case standing thus, and no reply having been filed, the defendant moved for a judgment on the two pleadings—namely, the amended petition and the answer to it.

The motion was denied and an exception was saved.

While this motion was pending and undisposed of, the plaintiff asked leave to file a second amended petition. This leave was granted, over the objection and exception of the defendant, and this was on the same day upon which the motion for judgment on the pleadings was refused. This amended petition contained the additional averment that the board and.

lodging mentioned were supplied under an express verbal promise and agreement on the part of the intestate to pay for them at the rate claimed and sued for.

To this pleading an answer was interposed, to the same purport and effect as that previously made, with an added allegation to the effect that if the things charged for were ever bestowed at all they had been fully paid for.

There was no reply, so far as the transcript in the case shows, nor do we find a reply among the attached pleadings, although in the charge given to the jury one is purported to be read. Upon the issues thus joined, the cause was put upon its trial to a jury.

There was a verdict for the plaintiff, upon which the judgment here complained of was entered, a motion for a new trial, seasonably made, having been overruled.

Three principal grounds of error are assigned and have been argued, for which the judgment should be reversed as it is said. The first of these is the refusal of the trial court to enter judgment on the pleadings, upon motion made by the defendant. Connected with this and to be considered as a part of it, is the concurrent allowance of the filing of an amended petition in the case. The new pleading was permitted by the same entry which denied the judgment on the pleadings. The denial was, no doubt, bottomed upon the known fact that the amended petition on its face healed the infirmity in consequence of which the judgment was asked. The discretion of the trial court in allowing amendments is limited only by the justice of the case, and the substantial identity of the proposed pleading to be substituted by amendment for the fatally defective one on account of which the motion for judgment was made. We think the amended petition fairly meets both of these conditions. Dealing with them in the inverse order of our statement of them, we can not regard the substitution of an express contract by apt allegation for an implied agreement to do the same thing, as stating a new, or different cause of action, or as in this case a departure from the cause of action of first instance. The cause of action is an agreement to pay for certain commo-

dities furnished, or rather the furnishing of them. The form of the agreement, whether implied or express, is only the mode of proving the cause; it is evidence that the cause of action exists, but is not itself the cause of action. A plaintiff may bring forward his pieces of evidence to make good his claim of right of action in such shape as to him may seem best, whether in the form of an express contract to pay, or some less direct and satisfactory way of proof. In this case it would have been sufficient, but for the rule laid down in *Sage* v. *Hinkle,* 67 O. S., 256, to prove the furnishing at the request of the intestate. The law would have supplied the promise to pay. Having found that this method would not meet the requirement of the rule stated, the amended pleading offered to make good the deficiency by alleging an express agreement to pay. This, to our apprehension, did not propose a new action, or cause of action, but a different way of proving the action already in court.

If this view is the correct view, then the justice of the case called for an allowance of the amendment. The defendant was not thereby called on to meet a new case, but the same case to be differently substantiated.

There is another and cogent reason why, in our estimation, we may with propriety come to the same conclusion. The motion for a judgment on the pleadings was bottomed, confessedly, on the insufficiency of the petition as it then stood to justify a recovery in a point of controlling substance, to-wit: the inability to show an express promise to pay. So the brief says, and such undeniably is the fact. The objection went to the substance of the pleading and was not at all concerned in the question of its regularity or the want of it.

In *Finch* v. *Finch,* 10 O. S., 501, a similar motion was denied on the ground stated in the opinion, p. 506, as follows:

"The motion being based, not on any alleged irregularity connected with the filing of the answer, nor upon any matter pertaining to its form merely, but on its alleged insufficiency in matter of substance the objection ought to have been taken by demurrer."

Our conclusion on this point is that the allegation of error is without merit.

Holding, as we thus have held, that the amended petition did not introduce a new or different cause of action from the one pleaded at first, but only brought into the case another method of proving the case already in court, this consideration appears to us to meet the next contention of the argument for plaintiff in error, to the effect that the permission to file the amended petition destroyed the benefit, otherwise coming to him from a statute of limitation.

Remembering here also that the thing that is barred by the statute in six months, unless suit is brought within that time, is the *claim* of a plaintiff, and the argument breaks down of its own weight. The "claim" is for a named sum of money, earned as compensation for board and lodging furnished. That was the "claim" alleged in the original petition. It also was the "claim" in the second petition. There was no change made in its amount or its subject. The amount was the same in each pleading, and in each it was declared to be in consideration of the same service or commodities. The aid of an alleged express contract was called in by the amendment to help prove the right to recover the sum prayed for alike in both petitions, and that was all; at most it was but an application of the "claim" once for all presented, rejected and sued on. As against that only "claim," the running of the statute was effectually stopped by the bringing of the suit, and this halted that "claim" totally and for all time. We think there is nothing in the point.

We now come to the last and most difficult question raised by the record as presenting a case of manifest error, for which a reversal of the judgment complained of should be awarded. It has to do with the instructions of the learned trial judge given in charge to the jury.

In order properly to exhibit this particular assignment of error, it will be necessary to give the court's language in respect of the weight and character of the evidence required by

applicable law to allow a recovery to the plaintiff or a denial of such recovery. It is as follows:

"The burden of proof in this case rests with the plaintiff to establish by preponderance of the evidence that she had an agreement with her mother, an express agreement that she was to board and lodge her mother for $2.50 a week, and that the mother promised and agreed to pay her $2.50 for the board and lodge. By the preponderance of the evidence is meant the greater weight of the evidence, not the great number of witnesses. You are the sole judges of the credibility of the witnesses, and of the preponderance or the weight to be given to the testimony of the witnesses. In determining what credibility you shall attach to the testimony of the witnesses, what weight you shall give to their testimony, you should take into consideration not only what the witnesses have said upon the witness stand, but their demeanor upon the witness stand, their conduct, their appearance on the witness stand, their manner of testifying, their relationship to the parties, if any there be, their bias or their prejudice, if any has been shown in the case by their evidence, their interest in your verdict, if any they have, the opportunities each have had of knowing the things concerning which they have testified, and the probabilities or improbabilities of the various statements, and every other fact and circumstance which will aid you in determining whether or not the preponderance of the evidence lies with the plaintiff or does not lie with the plaintiff, and in determining what credibility you will attach to the testimony of the witnesses."

Afterwards, in the charge, appears the following language:

"If the testimony in this case is evenly balanced, your verdict must be for the defendant. If the preponderance of the evidence, or greater weight of the evidence, under the rule as I have given it to you is on the side of the plaintiff, then your verdict should be for the plaintiff."

At a still later period in the order of instruction, is found this charge:

"Now, in this case if you should find from the evidence that the plaintiff, Bettie Holliday, was the daughter of Mahala Talbott, and I may say that fact is admitted by the pleadings and by the evidence, that she was a daughter, during the time Mrs.

Talbott lived and boarded with the plaintiff from November 7, 1908, to November 4, 1911, then I charge you as a matter of law that the plaintiff can not recover in this action unless you find from the evidence that there was an express contract between the plaintiff and the deceased mother, that the mother would pay for the board and lodging, and that the plaintiff bound herself to furnish the board and lodging. The evidence to establish this contract or agreement must be clear, unequivocal that there was an actual agreement, either in writing or verbal, to perform the services for pay on the one side, and upon the other side to receive the services of board and lodging and to pay for them. Cases of this kind are odious in the eyes of the law and not favored by the law, because there is an opportunity for fraud against estates of deceased persons, a great temptation to perjure by disappointment or avaricious relations. Therefore, the court lays down the rule, in order to recover in cases of this kind, where the relation of parent and child exists, or some such close relation, an express contract between the parties must be established by clear and positive, or unequivocal evidence, that such contract or agreement was entered into by the parties.

"By an express contract is meant an express promise on the one side to do something, and an express promise on the other side to pay therefor. In this case, if the evidence shows that Mahala Talbott asked her daughter, Bettie Holliday, to board and lodge her and that she said she would pay for it at whatever rate she said she would pay, and the daughter, Bettie Holliday, accepted the proposition and said she would board her and lodge her for pay, and lodged and boarded her therefor, or words to that effect, that would be an express contract, and the other, Mahala Talbott, would be liable on that express contract just as any stranger would be."

The remainder of the charge, material to the present consideration, is in the following words:

"If you find there was an express agreement, then the plaintiff is entitled to recover notwithstanding the fact Mahala Talbott was her mother. She had a right to make a contract of that kind, just as she had a right to make a contract with a stranger. If, on the other hand, you find plaintiff has failed by a preponderance of the evidence to establish that there was such a contract as this, then the plaintiff is not entitled to re-

cover. She can not recover simply because her mother lived with her and lodged with her during the three years, or practically three years of her life.

"Now, in this case you should take into consideration all the circumstances of the case, the relationship of the parties, and everything I have heretofore alluded to, and weigh and determine whether or not this agreement was made as claimed by the plaintiff, and if it was she is entitled to a verdict at your hands. If in your opinion no such agreement was made, or no similar agreement as an express agreement, then plaintiff is not entitled to recover."

Here we have, it is said, two separate and distinct rules, under either of which the plaintiff is allowed a recovery. But one of these can be correct—such is the argument—and no one can tell which the jury followed—the right one or the wrong one. And the conclusion drawn is that at best and in any event, the charge in this respect is clearly and fatally misleading. The claim is that the rule of preponderancy is given, which, under the law of this case is the wrong rule. Then, it is said the requirement of clear and unequivocal evidence as a condition, if not the sole condition of recovery, is made, but without any withdrawal of the rule of greater weight already given. And, finally, so it is argued, the court comes back to the first rule of preponderancy, and on that condition at last sends the jury to consider of their verdict. The two rules, it is said, are destructive of each other.

This confusion of rules, as it is charged to be, would necessarily and hopelessly beget a resulting confusion in the minds of the jury, for which a new trial should have been, and therefore should now be, awarded—such is the argument.

It is barely possible that the confusion—if such there is—resides elsewhere.

Before passing to a consideration of this part of the charge as a totality, we may observe that the defendant produced no evidence by his own witnesses; his efforts—perhaps unavoidably—were limited to a cross-examination of the witnesses for the plaintiff. What was thus extracted we do not know—the bill

of exceptions exhibiting no part of the testimony given at the trial, but only its tendency as supporting or contradicting the verdict. It is possible that the negative inference that something may have been developed by the cross-examination to bring the question of weight into the case, so that an instruction of some sort upon that point was proper, if proper otherwise.

Coming to consider the charge as a whole, and looking at it in its relations and with a sense of proportion, we see that in laying down the hard and fast rule of clear and convincing evidence as a condition of recovery, the court followed the imperative mandate of the Supreme Court in *Sage* v. *Hinkle, supra.* As there stated in the syllabus, it is this:

"2. Such contract" (*i. e.*, a contract between two members of a family agreeing to pay for support furnished by one of them) "may be in writing or it may rest entirely in parol, and it may be proved by direct or indirect evidence; but to entitle the plaintiff to recover, the contract must be established by clear and unequivocal proof."

It is to be said at the outset that this deliverance is wholly evolved from the breast of the court; it is "judge-made law," a thing with which no inconsiderable part of the Supreme Court of Ohio, as now constituted, is greatly at variance. It was thought necessary to strike out this new rule of law in the case referred to—admittedly so, in the opinion—because, it is said, "cases of this kind are odious and not favored by the courts." The fact is mentioned only to conclude that a law thus brought into being is not to be stretched beyond the needs of this non-favorite class of cases.

Premising this, it is to be observed that the requirement of "clear and unequivocal proof," goes only to the establishment of the contract between the parent and the child. All other issues raised in a case of which such a contract forms only a part, are to be resolved by the rules of evidence prevalent before the court made this especial rule. In the case at bar there were such other issues calling for proof measured by the standard of preponderancy, undoubtedly. Nor were they unimportant is-

sues, either. The furnishing of the board and the like—matters quite apart from the special contract to pay for them—were denied by the answer, and so called for evidence to be tested by some rule. The case of *Sage* v. *Hinkle* furnished no rule as to them; they were left as they were before.

The court charged the jury as to the express contract pleaded, in the exact words of that case, fully and lucidly, and was at the pains of giving also the reasons brought forward by the Supreme Court for enunciating it in the first place. This still left the other questions involved to be settled by some other rule; and, since the rule of "clear and unequivocal proof" could not well be extended to them, the rule to be given could have been, and therefore should have been, none other than the rule which the court carefully and discriminatingly gave, namely, that of the preponderating evidence. The court sorted out the express contract part of the case and told the jury that to establish *that* the high grade of proof named in the Sage-Hinkle case must be forthcoming, or no recovery could be had; he completely isolated this issue from the rest of the case, and it is difficult to see how the jury could have inferred that an application of the rule of preponderancy was expected to be transferred from this clearly segregated issue to the other issues. It is true that in the converse of this process of separation on the part of the court, the issues as to matters apart from the express contract were not in terms as clearly eliminated from the operation of the "clear and unequivocal proof" requirement as that question had been aparted from them. But we think the jury could hardly have mistaken its duty not to apply the rule of preponderancy to the express contract issue—so plainly had the court set off that question by itself and applied to it, not only the proper rule, but the peculiar and coercing reason for creating the rule in the first instance, as this appeared to the Supreme Court. And no more particular instruction in this respect was asked.

The matter may perhaps be looked at from another angle, from which a like conclusion can be reached.

Preponderancy goes to the *weight* of a thing. Clearness and unequivocalness go to the *character* of a thing. Weight is the correct translation of preponderancy from its parent word in another tongue. The rule of preponderancy has to do with the *quantity* or *amount* of the evidence necessary to work a recovery. The rule that the proof must be clear and unequivocal has regard to the *quality* of the evidence requisite to reach a given result—in this case, the establishment of an express agreement. These attributes are not the same. They are not the synonyms or equivalents of each other. They are not interchangeable terms, to be used indifferently, one for the other. It would be looseness of language to so treat them. They do not even shade into each other so imperceptibly that a person can not say where the office of one ends, with respect to the other, or when that of the latter begins. On the contrary, they are distinct in the service they are to render in their application to the facts of any case, and the function of one of them nowhere overlaps the duty of the other.

We think the distinction a real one, embodying a real difference, which in its application to the case in hand should have been level with the apprehension of a juryman—the circumstances considered.

The *amount,* the *quantity,* the *weight,* of the evidence necessary to a recovery, was the preponderating amount. This went to all the issues in the case, and should have been so charged—as it was charged. The *kind* of evidence—a thing quite apart from its *weight*—requisite to establish one particular issue in the case—to-wit, the issue of an express contract—was the "clear and unequivocal" kind; its required characteristic was *quality* and not *quantity.* And accordingly, that characteristic was named as an essential thing without which the express agreement could not be by law established.

Perhaps this distinction is not sufficiently attended to in many cases, and that the office of the one rule is often confounded with that of the other. For this reason we have been at pains to try and point it out, being willing to risk the impu-

tation of being tedious rather than not to be sure of being understood. Taking the charge together, we are clear that both rules were proper to be given, each in its own sphere, and neither being allowed to usurp the duty of the other. If the court had given the "clear and unequivocal proof" rule, without more, the charge would have been open to the accusation that the facts to be proved, aside from the express contract—for again let it be remembered that the "clear and unequivocal proof" rule is limited to that one consideration—were sent to the jury without any instruction at all. If he had spread that harsh and exacting rule over the whole case, it would have been quite without warrant of law.

We are informed by the bill of exceptions as follows:

"The defendant on cross-examination offered evidence tending to show the surroundings and circumstances under which said deceased lived with the plaintiff, and her resources and means and opportunity to use and apply them to the payment of said alleged claim during her lifetime, and introduced the checks given by her and the bank book, all as evidence tending to show that no such contract was made."

Of the range taken by this cross-examination we are not informed, but in view of the denials of the answer, we are not warranted in concluding, as we think, that there was nothing in it calling for some instruction upon matters other than the express agreement. And if as to these there should have been an instruction given, it must have been the rule that was given, that of preponderancy or the greater weight. If in the estimation of counsel the landmark between the two subjects was not in the charge made as plain as it should have been, a request to make it so would have been timely and proper. We can not say, as matter of law, that in this respect the instructions objected to misled the jury to the prejudice of the party now complaining.

This case it appears has twice been tried to a jury, with the same verdict in both instances. The record shows us that the trial court used every proper effort to set before the jury the

law applicable to the facts, with an apparent single desire to see substantial justice done as between the contending parties.

After a painstaking examination, with no other desire, we are unable to say that substantial justice has not been done.

Finding, therefore, no error in the record before us, the judgment complained of is affirmed.

---

### INJURY TO ONE ATTEMPTING TO BOARD A CAR.

Court of Appeals for Hamilton County.